# PAUL REED v. THE STATE.

1. THEFT. — A fraudulent intent is an element in every case of theft, and in general is referable to the time of the taking; but if the taking, though originally lawful, was obtained by a false pretext, or with intent to

deprive the owner of the value of the property and to appropriate it to the taker's own use, and it was so appropriated, the offence of theft is complete.

2. THEFT OF LOST PROPERTY is not specifically treated of in the Penal Code of this State, but is regulated by its general provisions and by the rules and principles established by judicial authority.

3. SAME. — If it was the intent of the accused, at the time of the finding, to restore the property to its owner, but subsequently he appropriated it to his own use, the case is not theft, inasmuch as the taking was not *animo furandi.*

4. SAME. — If, when he found the property, he really believed the owner could not be found, and he afterwards disposed of it to his own use, either before or after ascertaining the owner, the case is not theft.

5. SAME. — If, when he found the property, or obtained it from the finder, he appropriated it with intent to take entire dominion over it, and at the same time knew or reasonably believed that the owner could be found, the case is theft. See the facts of the present case in illustration of this principle.

APPEAL from the District Court of Grayson. Tried below before the Hon. J. BLEDSOE.

The material facts are summarily but clearly stated in the opinion. The jury assessed the punishment at four years in the penitentiary.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. The question of intent enters into every case of theft. Generally, a fraudulent intent must exist in the mind of the person accused, at the time of the taking, as the offence of theft is defined in art. 724 of the Penal Code. In all cases the taking must be wrongful. If property came into the possession of the accused by lawful means, the subsequent appropriation of it is not theft. But if the taking, though originally lawful, was obtained by any false pretext, or with an intent to deprive the owner of the value thereof and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offence of theft is complete. Penal Code, art. 727.

The Code does not specially provide as to theft of property which had been lost by the owner and found by the accused. In an investigation of authority for a definite rule by which we can be guided in the present and similar cases, where theft is predicated upon lost property, we are of opinion that the adjudicated cases will be found to be in harmony with the following rules deduced by Mr. Archbold in considering the case of *Regina* v. *Thurton,* 2 Car. & Kir. 830. He says: "From this decision, which may be a safe guide in all cases hereafter, it appears that a taking by finding, in larceny, may be classed under three heads: *First,* Where upon the finding the party has no intention to appropriate the thing found to his own use, but, on the contrary, intends to restore it to the owner when found, but afterwards he disposes of it to his own use, either before or even after he knows who the owner is, this is not larceny; because there was no *animus furandi* at the time of taking. *Secondly,* Where a man finds goods that have been actually lost, or are reasonably supposed by him to have been lost, and appropriates them with intent to take the entire dominion over them, really believing then that the owner cannot be found, and he afterwards disposes of them to his own use, either before or even after he knows who the owner is, it is not larceny; because the taking, though not exactly innocent, was not punishable, and could not be made the subject of an action of trespass. *Thirdly,* Where a man finds goods that have been actually lost, or are reasonably supposed by him to be lost, and appropriates them with intent to take the entire dominion over them, he at the same time knowing or really believing the owner can be found, this is larceny, whether the finder afterwards converts them to his own use or not." 2 Archb. Cr. Pr. & Pl. 388–395, side p. 389. By applying this rule in connection with the articles of the Code above cited, a safe rule will be found to determine the present case.

It is shown by the testimony that the alleged owner lost his pocket-book, containing the money described in the in-

dictment; and that besides the money the pocket-book con-
tained papers by which the owner could have been known
and the property identified; and among the contents was the
business-card of the owner, giving his name and place of
business, which was in the same city and near by where
the pocket-book was lost. Very soon after the loss, the
owner saw the defendant and apprised him of it, when the
defendant stated that he had seen a negro boy, whom he did
not know, with the pocket-book in his possession. One
witness testified to having seen a negro boy and the defend-
ant together, — the negro boy having the pocket-book, and
the defendant obtaining possession of it. At this time the
money was visible, the ends of the bills protruding from
the pocket-book; which seems not to have been seen after-
wards, and was not recovered. A roll of money answering
the general description of that mentioned in the indict-
ment, amounting to $43, was found secreted in the house
of the defendant, where he lived alone, and in the roll
was one bill which was clearly identified by the owner as of
the contents of the pocket-book when lost. Under these
circumstances, the jury were warranted in coming to the
conclusion that the defendant, when he obtained possession
of the pocket-book, whether he found it himself or obtained
it from another who had found it, intended to deprive the
owner of it and to assume dominion over it; and further,
that he had in fact so appropriated it was plainly inferable
from the testimony, which brought him within the third rule
of Mr. Archbold and art. 727 of the Penal Code.

The intent was to be discovered from the evidence, under
appropriate instructions from the court. The charge of the
court was an accurate enunciation of the law as herein laid
down. The court did not err in its charge, or in refusing
to give the special instructions asked by the defendant's
counsel.

Finding no error, the judgment is affirmed.
*Affirmed.*